**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| IN RE: | § | CASE NO.   23-50779-cag |
| ARTESIA SPRINGS, LLC, | § | |
| Debtor | § | CHAPTER 11 PROCEEDING |
| | § | SUBCHAPTER V |

**ARTESIA SPRINGS, LLC FIRST AMENDED PLAN OF**
**REORGANIZATION FOR A SMALL**
**BUSINESS UNDER SUBCHAPER V OF CHAPTER 11**

Artesia Springs, LLC ("Artesia Springs" or "Debtor") hereby files its First Amended Plan of Reorganization for a Small Business under Subchapter V of Chapter 11 (the "Plan") pursuant to 11 U.S.C. § 1189-1190.

## BACKGROUND

**A.       Description and History of Debtor's Business**

Artesia Springs began operations in November of 2004 after acquiring a natural artesian source.  Rodolpho Ramon, the company's current CEO, brought 20 years of experience in the bottled water industry, beginning his career as a route driver, moving up to manager, general manager and then regional manager for companies in Texas, Illinois, and Louisiana. Artesia Springs offers home and office delivery throughout the greater San Antonio area as well as bulk water deliveries throughout Texas.  The product line includes 3-, 4- and 5-gallon bottled water, case water including alkaline and "private label" products as well as water cooler rentals. Customers are residential, businesses, oil field supply houses, car dealerships, insurance companies and water stores.  Artesia Springs manufactures its own 4- & 5-gallon bottles as well as half liter and liter bottles to keep our costs competitive with large, bottled water companies.

The Debtor financed the acquisition of its equipment and its working capital, both of which are obviously essential to the operation of its business through its long-time relationship with Frost Bank and also through loans from the US Small Business Administration (the "SBA"). The Debtor also obtained an SBA EIDL disaster-relief loan in 2020 which assisted in keeping the business afloat; however, sales have not yet returned to "pre-Covid" levels.

Financial Information

Artesia Springs' 2019 sales were $2,449,195; however, due to the Covid pandemic, 2020 and 2021 sales decreased dramatically to $1,737,736 and $1,714,202 respectively. Since 2021, Artesia

Springs has diligently worked to increase sales and, in 2022, sales increased to $2,283,254. Unfortunately, during the same time period, Artesia Springs experienced a dramatic increase in raw material costs due to supply chain issues, inflation and fuel cost increases. Furthermore, interest expense and cash flow constraints arising from merchant credit agreements negatively affected the company's operations.

Debtor does not own any real property but leases the property on which it conduct its sales, manufacturing, and distribution operations. Artesia Springs' primary assets consist of its: (a) water well and Edwards Aquifer Groundwater withdrawal rights; (b) manufacturing and labeling equipment, (c) receivables and (d) goodwill created through positive customer relationships.

On June 20th, 2023 (the "Petition Date"), Debtor had approximately $51,000.00 in funds on deposit. Furthermore, it estimates that, it has an additional $$800,000.00 in furniture, trade fixtures, equipment, inventory and other assets, thereby rendering the ad valorem taxing authorities, Frost Bank, the SBA, LiftFund, Inc. as "fully secured". All other creditors (including Advantage Platform Services, Inc., Fundamental Capital, LLC, Fincoast Capital, LLC and WT Liquidity) who might assert a security interest or other interest in the Debtor's assets are unsecured creditors and its security interests, liens and all other interests shall, at the time of the confirmation of this Plan, be deemed avoided and unenforceable.

Debtor does not owe any federal income or payroll taxes as of the petition date, but does owe $4,575.39 in 2022 franchise taxes to the Texas Comptroller. Debtor owes approximately $5,400 in 2022 ad valorem taxes and will also owe 2023 ad valorem taxes (which Artesia Springs intends to pay in the ordinary course of business).

The Debtor's primary secured lender is the U.S. Small Business Association which, through 2 loans, is owed approximately $801,000.00. Frost Bank has a small, first in priority, loan in the amount of approximately $25,000.00. Frost Bank and the SBA hold first and second priority lien status (behind only the statutory ad valorem taxing authorities' security interest and purchase money security interest held by LiftFund, Inc.) on all the Debtor's assets which fully encumbers those assets. The Debtor obtained approximately four merchant cash advance ("MCA") loans, where the MCA lenders appear to have filed UCC financing statements, However, as noted above, the value of the Debtor's assets does not exceed the amount of the ad valorem taxing authorities', Frost Bank's, the SBA's, and LiftFund, Inc.'s collateral securing payment of their respective allowed secured claims in this case.

Based upon current estimates, total unsecured claims in the case will be at most $395,000.00. However, Artesia Springs needs to analyze all claims on file or to be filed in this proceeding and will object to all or a portion of a claim which it believes should be disallowed.

The Debtor intends to make regular monthly payments to the creditors holding allowed secured claims, payment of which is secured by its equipment and other assets (with such security interests remaining in full force and effect after the Plan's confirmation). Artesia Springs shall also cure all arrearages under those secured obligations by making 36 equal monthly payments at the contractual rate of interest. Furthermore, the Debtor intends to assume all of its real and personal

2

property leases and shall cure any defaults pursuant to the terms of Section 365 of the Bankruptcy Code or the agreement of the Debtor and its lessors. The Debtor maintains all of the appropriate insurance required pursuant to its agreements with its secured creditors and lessors.

In the alternative, in the event that Artesia Springs receives an acceptable offer to sell its business as a "going concern" before or after the Plan confirmation and such offer exceeds the sum of: (a) the allowed claims held by the ad valorem taxing authorities, Frost Bank, the SBA and LiftFund, Inc.; (b) the allowed claim held by the Texas Comptroller; (c) any outstanding allowed administrative claims (including professional fees); (d) the Debtor's total projected disposable income over the period of 36 months after the Plan confirmation and (e) the closing costs of the sale. Furthermore, such offer must assume all of the Debtor's real and personal property leases and executory contracts and cure any outstanding arrearages due under such agreements. The Debtor shall obtain court approval of such sale and will sell its assets free and clear of all liens, claims and encumbrances and without any successor liability for the purchaser.

Reasons for Filing Bankruptcy

As noted above, the Debtor's problems which led to the filing are almost entirely attributable to the pandemic and resulting revenue reduction. The Debtor then made the unfortunate mistake that many small businesses make by obtaining merchant cash advance loans. Unfortunately, this did not solve cash flow problems because the MCA loan repayment terms resulted in large payments in a very condensed time period. With the strains on the Debtor's cash flow, it needed to restructure is debts by filing this case.

## B.    **Liquidation Analysis**

Under sections 1191 and 1129(a)(7) of the Bankruptcy Code a plan can be confirmed without the accepting votes of impaired classes of claims as long as each such class would receive under the plan "not less than" they would receive "if the debtor were liquidated under chapter 7." Therefore, to confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. To assist in this evaluation, Debtor attaches a Liquidation Analysis to this Plan as Exhibit "A" hereto. A review of this analysis demonstrates that if the Debtor were liquidated in a Chapter 7 case, there would nothing left to pay to unsecured creditors after paying ad valorem taxing authorities, secured creditors holding purchase money security interests, Frost Bank and the SBA and paying administrative and priority claims. Further, if this case were converted to Chapter 7 case and the assets of the Debtor liquidated, such a liquidation would destroy any going-concern value of the Debtor's business because it would require the cessation of business operations and default on customer service agreements which would destroy the goodwill of the company. The Debtor would not be able to fulfill its commitments to its customers and would default, resulting in the filing of claims against the estate by the Debtor's customers. In fact, in a Chapter 7 case, there would not even be sufficient asset value to pay the Debtor's secured creditors, leaving other creditors and equity interest holders to receive nothing on account of their claims and interest. Therefore, all creditors are better off under the Debtor's proposed Plan.

C.      **Ability to make future plan payments and operate without further reorganization**

A Plan proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the Debtor's business.  In this regard, Debtor has provided projected financial information as Exhibit "B" hereto.

The Debtor's financial projections show that the Debtor will have projected disposable income (as defined by §1191(d) of the Bankruptcy Code) for the period described in §1191(c)(2) of $211,239.00.   The Debtor's projections demonstrate the disposable income paid on an annual basis to the Holders of claims in Class 5 are attached as Exhibit "B" under the row entitled "Annual Disposable Income Calculation".

Unless the Debtor's assets are sold as set forth above, the Debtor expects to make its final Plan payment in October 2026.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

# ARTICLE I
# SUMMARY

This Plan of Reorganization (the Plan) under Chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of Kevin G. Saunders Photography, Inc. (the "Debtor") from the cash flow generated from the operations of the company and its future income.

This Plan provides for:  1 classes of priority claims and administrative claims (who are not entitled to vote);
4 classes of secured creditors with allowed claims;
1 class of creditors with allowed, non-priority unsecured claims; and
1 class of equity security holders.

It is estimated that non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 37cents on the dollar assuming all filed and scheduled unsecured claims are allowed in full. However, these claims are subject to the claim objection process in this Plan.  This Plan also provides for the payment of administrative and priority claims as required by law and as provided herein.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim.

**Your rights may be affected. You should read this Plan carefully and discuss it with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**
## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS

2.1 **Claims and Equity Interests Classified**. In order to make this Plan easier to understand, to aid in the Plan balloting process, and for all confirmation matters, all Claims (except certain Priority Non-Tax Claims and Priority Tax Claims) and Equity Interests shall be classified as set forth in this Article II of the Plan.

2.2 **Priority Claims and Priority Tax Claims.** Section 1123(a)(1) of the Bankruptcy Code provides that certain Priority Non-Tax Claims (*i.e.* priority claims that are not administrative expense claims under § 507(a)(2) or "gap" period claims in an involuntary case under § 507(a)(3) and Priority Tax Claims under § 507(a)(8), shall not be classified for purposes 5 of voting or receiving distributions under the Plan. All such Claims are to be treated separately as unclassified Claims on the terms set forth in Article III of the Plan.

2.3 **Classes of Claims and Equity Interests.** The Plan classifies Claims and Equity Interests as follows:

| Class | Designation | Impairment? | Entitled to Vote? |
|---|---|---|---|
| N/A | Priority Tax Claims (TX Comptroller) and Administrative Claims | N/A | No |
| 2. | Secured Claim of Bexar County | No | No (deemed to accept) |
| 3. | Secured Claim of Frost Bank | Yes | Yes |
| 3. | Secured Claim of United States Small Business Administration | Yes | Yes |
| 4. | Secured Claim of LiftFund, Inc. | Yes | Yes |
| 5. | Unsecured Claims | Yes | Yes |
| 6. | Equity Holders | No | No (deemed to accept) |

2.4 **Impairment Controversies**. All controversies as to whether a Class of Claims or Equity Interests are impaired under the Plan shall be resolved by the Bankruptcy Court after notice and hearing.

## ARTICLE III TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## PRIORITY TAX CLAIMS AND COURT FEES

3.01      Unclassified Claims.  Under section §1123(a)(1), administrative expense claims,

and priority tax claims (the Texas Comptroller's $4575.39 which will be paid in 36 equal monthly installments, with interest accruing thereon at the current statutorily imposed rate) are not in specific classes.

    3.02    Administrative Expense Claims.

    All Administrative Expense Claims against the Debtor shall be treated as follows:

    Time for Filing. All Holders of Administrative Expense Claims, other than Professional Persons holding Professional Fee Claims, shall file with the Bankruptcy Court a request for a payment of such Claims within thirty (30) days after the Effective Date. Any such request must be served on the Debtor, its' counsel and all parties requesting notice in the Bankruptcy Case, and must, at a minimum, set forth (i) the name of the Holder of the Administrative Expense Claim; (ii) the amount of the Administrative Expense Claim; and (iii) the basis for the Administrative Expense Claim. A failure to file any such request in a timely fashion will result in the Administrative Expense Claim in question being discharged and its Holder forever barred from asserting such Administrative Expense Claim against the Debtor or the Reorganized Debtor.

    Allowance. An Administrative Expense Claim for which a request for payment has been properly filed shall become an Allowed Administrative Expense Claim unless an objection is filed by the date that is thirty (30) days after a request for payment of such Administrative Expense Claim is filed. If an objection is timely filed, the Administrative Expense Claim in question shall become an Allowed Administrative Expense Claim only to the extent so Allowed by Final Order of the Bankruptcy Court.

    Professional Fee Claims. Every Professional Person holding a Professional Fee Claim that has not previously been the subject of a final fee application and accompanying Bankruptcy Court order shall file a final application for payment of fees and reimbursement of expenses no later than the date that is sixty (60) days after the Effective Date; provided, however, that a Professional Person may supplement its request up to and including the date of the hearing on such request to account for fees and expenses incurred following the Effective Date in connection with, among other things, preparation of the request for allowance of such Professional Fee Claim, attendance at the hearing thereon and any other allowable fees or expenses not previously requested.  Upon approval of such applications by the Bankruptcy Court, the Claims will be deemed Allowed Professional Fee Claims which shall be paid as provided below.

    Payment.

    Each Holder of an administrative expense claim allowed under § 503 of the Code will be paid as follows:

    (A). In the event this Plan is confirmed consensually under section 1191(a): Each Holder of an Allowed Administrative Expense Claim shall be paid the full amount of their Allowed

Claim(s) on the Effective Date of this Plan (as defined in Article VIII below), in cash, or upon such other terms as may be agreed upon by the Holder(s) of such Claim(s) and the Debtor.

(B). In the event this Plan is confirmed non-consensually under section 1191(b):  Each Holder of an Allowed Administrative Expense Claim shall be paid the full amount of their Allowed Claim(s) in cash during the term of the Plan, as follows:

(1) Payments of Professional Fee Claims shall be paid in full h by the Reorganized Debtor from Cash on hand or from operating Cash flow as funds are  available, or on a pro rata basis by the Debtor from the monthly payment allocated for payment of such sums according to the payment schedule attached hereto as Exhibit "B", or upon such terms as may be agreed upon by the Debtor and the Holder(s) of such Claim(s); and

It is anticipated that the following Administrative Expense Claims exist:

A.     Law Office of William B. Kingman, PC - $35,000.00 (estimated, after application of remaining pre-and post-petition retainers) - paid as provided in an order approving such fees entered by the Court, or as agreed upon between attorney and the Debtor.

B.     Subchapter V Trustee Fees – An administrative expense claim for the services of the Subchapter V Trustee in this case shall be allowed as provided by order of the Court in connection with the Trustee's application seeking an award of such fees and expenses.  The SubChapter V Trustee has received monthly payments from the Debtor pursuant to court order in this proceeding.  Such payments shall be applied against the balance of the Trustee's allowed fees.

3.03     <u>Priority Tax Claims</u>.    Each Holder of a Priority Tax Claim (*i.e.* of a kind provided by §507(a)(8) of the Code), the extent such claim is Allowed, will be paid consistent with § 1129(a)(9)(C) of the Code.  Except to the extent that a Holder of an Allowed Priority Tax Claim and the Debtor agree to a different treatment, each Holder of an Allowed Priority Tax Claim will receive in full satisfaction of such Claim, Cash payments from Reorganized Debtor over a period not exceeding five (5) years from the Petition Date. Payments by Reorganized Debtor provided for herein shall be made in equal monthly installments with the first payment due on the later of the fifteenth Business Day of the first month following the Effective Date of this Plan, or the date on which such claims(s) is/are allowed by a final non-appealable order.  Interest shall accrue on the Priority Tax Claim in accordance with section 511 of the Bankruptcy Code. All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due. To the extent the Holder of an Allowed Priority Tax Claim has a Lien on the Debtor's property, such Lien shall remain in place until such Allowed Priority Tax Claim has been paid in full.

The following Priority Tax Claims have been filed in this case:

Texas Comptroller of Public Accounts - $4575.39. for 2022 franchise taxes due (Claim No. 8). The Debtor shall pay the full amount of such claim over 36 months, with interest accruing thereon at the statutory rate until paid in full.

3.04    Statutory Fees.  All fees required to be paid under 28 U.S.C. §1930 that are owed on or before the Effective Date of this Plan have been paid or will be paid on the Effective Date. Because this case was filed under Subchapter V of Chapter 11, there are no quarterly U.S. Trustee Fees owed.

### ARTICLE IV
### TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Allowed Secured Claim of Bexar County | Unimpaired | The Debtor shall pay the 2022 ad valorem taxes due and owing in 36 equal monthly installments, with interest thereon at the statutory rate of interest.  Furthermore, the Debtor shall timely pay the 2023 ad valorem taxes in the ordinary course of business. After confirmation, the Class 1 Creditor shall retain its security interests in the Debtor's assets. |
| Class 2-Allowed Secured Claim of Frost Bank | Impaired | The Allowed Secured Claim of Frost Bank shall be paid as follows: (A). On the 10th day of the month following the Effective Date and each month thereafter until the note is paid in full, the Debtor will make monthly payments to Frost Bank in the monthly amount provided in its Note with Frost Bank; (B) on the 10th day of the month following the Effective Date, the Debtor shall pay all Pre-Confirmation arrears due and owing on under the Frost Bank note in 36 equal monthly installments; (C). The interest rate and monthly payment shall remain the same as provided in the Debtor's Note with Frost Bank; (D) Frost Bank shall retain its liens and security interests until its Allowed Secured Claim is paid in full. |

| Class 3 – Allowed Secured Claim of U.S. Small Business Administration ("SBA") | Impaired | The Allowed Secured Claim of the SBA shall be paid as follows: (A). On the 10th day of the month following the Effective Date and each month thereafter until the note is paid in full, the Debtor will make monthly payments to the SBA in the monthly amount provided in its Note with the SBA; (B) on the 10th day of the month following the Effective Date, the Debtor shall pay all Pre-Confirmation arrears due and owing on under the SBA notes in 36 equal monthly installments; (C). The interest rate and monthly payment shall remain the same as provided in the Debtor's Note with the SBA; (D) SBA shall retain its liens and security interests until its Allowed Secured Claim is paid in full. |
|---|---|---|
| Class 4 – Allowed Secured Claim of LiftFund, Inc. ("LiftFund") | Impaired | The Allowed Secured Claim of LiftFund shall be paid as follows: (A). On the 10th day of the month following the Effective Date and each month thereafter until the note is paid in full, the Debtor will make monthly payments to LiftFund in the monthly amount provided in its Note with LiftFund; (B) on the 10th day of the month following the Effective Date, the Debtor shall pay all Pre-Confirmation arrears due and owing on under the LiftFund note in 36 equal monthly installments; (C). The interest rate and monthly payment shall remain the same as provided in the Debtor's Note with LiftFund; (D) LiftFund shall retain its liens and security interests until its Allowed Secured Claim is paid in full. |

| Class 5 – Allowed Unsecured Claims (including undersecured claims and deficiency balances owed after disposition of collateral) | Impaired | The Debtor shall set aside the cumulative amounts identified as "Annual Disposable Income Calculation" shown in Exhibit "B" attached hereto, during the period of time which is thirty-six (36) months from the Effective Date of the Plan, which shall be known as the "General Unsecured Creditor Fund". The Debtor shall make the annual payment due to this fund in or before November of 2024, 2025 and 2026 following the Effective Date of the Plan.  All Creditors holding Allowed Unsecured Claims shall be paid a Pro Rata share of the funds deposited in the General Unsecured Creditor Fund on an annual basis, with each payment being November of 2024, 2025 and 2026.  Based upon current projections set forth in Exhibit B, Debtor believes the payments to unsecured creditors will be approximately 37% of the Allowed amount of each claim. |
|---|---|---|
| Class 6 - Equity Holders of the Debtor | Unimpaired | All Equity Holders shall retain their membership interests in the Reorganized Debtor. |

As noted above, in the alternative to the payments to the creditors with allowed claims as described above, the Debtor might sell its business as a "going concern" by selling its assets free and clear of all liens claims and encumbrances.  In such event, the administrative claims, the allowed priority claims and all allowed secured claims shall be paid in full at closing (or pursuant to the agreement of the parties).  The unsecured creditors with allowed claims shall receive the amount that they would have received in annual payments of projected disposable income as described in "Class 5-Allowed Unsecured Claims" in the table above.  Also, all existing Equity Holders' interests shall be canceled.

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01 Claims on File. The Debtor is relying upon the formal Proofs of Claims on file and the Debtor's Schedules currently on file in seeking confirmation of the Plan. No informal Proofs of Claim shall be deemed to have been filed in this Chapter 11 Case. No informal amendment, modification or supplementation shall be deemed filed in this Chapter 11 Case. No Proofs of Claim may be filed, amended, modified, or supplemented after the Confirmation Date without the consent of the Debtor.  Any filing prohibited by this paragraph shall be void.

5.02 Objections to Claims. Except as is otherwise provided for with respect to Professional Fees or as otherwise ordered by the Bankruptcy Court, objections to Claims and Equity Interests shall be prosecuted as follows:

A.      Pre-Effective Date Objections - Prior to the Effective Date, any party entitled to do so under the Bankruptcy Code or order of the Court may file and prosecute objections to Claims. The failure of the Debtor prior to Confirmation to object to a Claim for purposes of voting on the Plan shall in no way be deemed to be a waiver of the right of Reorganized Debtor to object to such Claim in whole or in part.

B.      Post Effective Date Objections - After the Effective Date, objections to Claims and Equity Interests may be made exclusively by the Reorganized Debtor. Objections to Claims and Equity Interests shall be made as soon as practicable, but in no event later than sixty (60) days after the Effective Date (unless otherwise ordered by the Bankruptcy Court). The filing, prosecution, settlement, or withdrawal of all objections to Claims and Equity Interests filed after the Effective Date are reserved to the sound discretion of Reorganized Debtor.

5.03  Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a Final Order, and as to which either: (i) a proof of claim has been filed or deemed  filed, and the Debtor or another party in interest has filed, or hereafter files, an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02      Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03      Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

5.04      Bar Date and Allowance of Unfiled Claims.  The deadline for creditors to file claims in this case expired on April 12, 2023.  Creditors who did not timely file a proof of claim on or before such date may still have an allowed claim in the amount scheduled by the Debtor, and may receive a distribution in this case pursuant to the terms of this Plan if: (A). such creditors' claims were listed in the Debtor's Schedules, but not listed as disputed, contingent or unliquidated, and (B). neither the Debtor nor other party-in-interest obtains an order disallowing the claim or allowing the claim in an amount which differs from the amount scheduled by the Debtor.

5.05      Disallowance of Contingent, Unliquidated and Disputed Claims. Any creditors of the Debtor and its Bankruptcy Estate who: (A). were scheduled by the Debtor as holding a contingent, unliquidated and/or disputed claim, and (B). failed to timely file a proof of claim with the United States Bankruptcy Clerk for the Western District of Texas, San Antonio Division, shall be barred from receiving a distribution in this case and the Discharge set forth in Article IX below shall apply to each such creditor notwithstanding the fact that no distribution shall be made to such creditor(s).

5.06    Bar Date for Newly Added Creditors.  Any creditors and parties-in-interest added to this case by the Debtor through the filing of an amended creditor matrix up until the date of entry of an Order confirming this Plan of Reorganization (hereinafter known as "Newly Added Creditors"), shall have a supplemental bar date to file proofs of claim in this case.  Newly Added Creditors shall have until 45 days from the date of entry of an Order confirming this Plan of Reorganization (the "Supplemental Bar Date") to file a proof of claim in this case with the United States Bankruptcy Clerk for the Western District of Texas, San Antonio Division.  The Debtor and any parties-in-interest may file objections to such claim(s).  Any Newly Added Creditors who fail to file a proof of claim on or before the Supplemental Bar Date shall be barred from receiving a distribution in this case other than as a creditor holding a claim scheduled as non-contingent, not disputed and liquidated, and the Discharge set forth in Article IX below shall apply to each such creditor notwithstanding the fact that no distribution shall be made to such creditor(s).  In the event a claim is timely filed by a Newly Added Creditor, the Reorganized Debtor shall have 30 days from the date the claim is filed to file an objection to such claim.

5.07    Determination of Secured Status.  Any Creditor claiming a security interest in an asset or assets of the Debtor shall be bound by their treatment set forth herein.  The total value of a Creditor's collateral shall be fixed by this Plan, and no separate adversary proceeding shall be required to obtain a determination of the validity, extent or priority of any Creditors' lien(s).  Any Creditor which has filed a fully secured or partially secured proof of claim herein shall have instead an Allowed Unsecured Claim unless it is treated as a fully secured or partially secured creditor in Article IV above.  Furthermore, a Creditor which failed to timely file a proof of claim in this case shall be deemed to have no security interest in any of the Debtor's or Reorganized Debtor's assets after the deadline set by the Court for filing objections to the confirmation of this Plan.

5.08    Disallowance of Penalties and Fines.  Except as provided for in the Plan, no distribution shall be made under this Plan on account of, and no Allowed Claim shall include, any fine, penalty or exemplary or punitive damages relating to or arising from any default or breach by the Debtor, and any Claim on account of such fine, penalty, or exemplary or punitive damages shall be deemed disallowed, whether or not an objection is filed to such Claim.

5.09    Interest on Claims. Unless otherwise specifically provided for in the Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no Holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a) The Debtor assumes the following executory contracts and/or unexpired leases effective upon the Effective Date of this Plan or when an order approving such assumption is entered with the Court. Debtor assumes: (1). all contracts for services with its clients, (2) Commercial real estate lease with 8102 Interchange Partners, LLC; (3). Lease, as amended, of Edwards Acquifer Groundwater Withdrawal Rights and Edwards Aquifer Authority Initial Regular Permit between the Debtor and PERENfra as successor-in-interest to Laguna Water II, Ltd.; (4). Personal property lease with Documentation; (5) Personal property leases with Penske Truck Leasing Co. L.P.; (5) Facilities Services rental agreement with Cintas Corporation; (6). Personal property sublease between Patty and Rodolfo Ramon and the Debtor and relating to the Ramons' personal property leasewith FirstBank Southwest Terms[1] and (7) service contracts with existing software and internet service providers.

Unless the parties to a lease or executory contract agree otherwise, upon the later of: (a) the date on which the "cure" amount is determined by the Court or (b) Effective Date, the Debtor shall, as set forth in Section 365 of the Code, cure the court-approved "cure" amount due under each assumed contract.

6.02    Rejected Executory Contracts or Leases.

 The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed previously by order of the Court or specifically listed under section 6.01(a) above, or pursuant to an application filed before the date of the order confirming this Plan, upon the Effective Date of this Plan.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than thirty (30) days after the date of the order confirming this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

7.1 Means. This Plan is based upon the distributions to Creditors by the Debtor, at its option, by means of one or more of the following: (a) cash presently held by the Debtor and cash to be acquired through the operation of its business including cash generated from the contracts the Debtor is currently under and those contracts that the Debtor may enter into at a later date; and (b) collection of any accounts receivable or (c) the proceeds of the sale of Artesia Springs' assets.

---

[1] The sublease is a "pass-through" lease, meaning that the Ramons have the Debtor deliver the monthly payment due and owing FirstBank Southwest directly to the bank.  They do not receive any economic benefit from this sublease.

7.2 <u>Continued Existence</u>. Debtor shall continue to exist as Reorganized Debtor after the Effective Date with its current officer, Rodolfo Ramon, continuing to operate the company.

7.3 <u>Operations of Reorganized Debtor</u>. After the Effective Date, the Reorganized Debtor shall continue in business and shall carry on its business affairs without consultation or approval from the Bankruptcy Court or the Creditors. The Reorganized Debtor shall be free to use or sell its assets, hire, and compensate Professionals and otherwise operate free of the restrictions, limitations and constraints existing under the Code. The Reorganized Debtor shall operate in conformity with the Plan and shall make distributions to Creditors timely and in accordance with the Plan.

7.4 <u>Free and Clear Sale Authorized</u>.  The members of the Debtor shall be authorized to sell the Debtor or the assets of the Debtor to a buyer after the Effective Date, without further order of the Court, so long as the consideration received is sufficient to pay at least all sums due under this Plan.  For purposes of such sale, the sums due under this Plan shall be the sum of (a) the allowed claims held by the ad valorem taxing authorities, Frost Bank, the SBA, and LiftFund, Inc.; (b) the allowed claim held by the Texas Comptroller; (c) any outstanding allowed administrative claims (including professional fees); (d) the Debtor's total projected disposable income over the period of 36 months after the Plan confirmation and (e) the closing costs of the sale. For each Allowed Claims in other classes, the pro rata amounts due to such creditors under this Plan as of the closing date which is shown as the Annual Disposable Income Calculation on Exhibit "B" attached hereto. Such sale shall be deemed to be free and clear of all liens, encumbrances, claims and interests as if the sale had occurred pursuant to §363(f) of the Bankruptcy Code.

7.5 <u>Vesting of Assets</u>. Unless this Plan is confirmed under 1191(b), on the Effective Date, all Property of the Estate of the Debtor, including, but not limited to any rights or causes of action, whether under the Bankruptcy Code or any other applicable law, shall vest in Reorganized Debtor. Claims and causes of action shall include, but not be limited to the Litigation Claims referenced herein.  If a plan is confirmed under 1191(b), all Property shall not vest with the Reorganized Debtor until all plan payments have been made. Upon any conversion of the Bankruptcy Case to Chapter 7, all assets vesting in Reorganized Debtor shall pass to the Chapter 7 trustee as property of the Chapter 7 Bankruptcy Estate.

7.6 <u>Preservation of Debtor's Claims</u>. Any and all causes of action which the Debtor may have, including, but not limited to Avoidance Actions, or which may be enforceable under any statute, shall be preserved and shall constitute Property of the Estate and shall be conveyed to Reorganized Debtor on the Effective Date. The Court shall retain jurisdiction to determine all such causes of action.

7.7 <u>Preservation of Insurance</u>. Nothing in this Plan, including the discharge or release of the Debtor provided in this Plan, shall diminish or impair the enforceability of any insurance policies that may cover any Claims against the Debtor, the Reorganized Debtor or any member, officer, director, agent, professional, financial advisor or other Person covered by any insurance policy maintained by the Debtor.

7.8 <u>Release of Liens</u>. Except as otherwise provided in the Plan for Classes 1-5, the Confirmation Order, or in any document, instrument, or other agreement created in connection with the Plan, all mortgages, deeds of trust, Liens, UCC filings, or other security interests against the Property of the Estate and the Debtor's Assets shall be avoided and deemed released on the Effective Date. Artesia Springs is authorized to file releases of any UCC filings or lien filings to evidence the releases.

7.9 <u>Exemption from Stamp or Similar Taxes</u>. In accordance with Section 1146(c) of the Bankruptcy Code: (a) the issuance, distribution, transfer or exchange of Reorganized Debtor Common Stock or other Estate Property; (b) the creation, modification, consolidation or recording of any deed of trust or other security interest, the securing of additional indebtedness by such means or by other means in furtherance of, on in connection with, this Plan or the Confirmation Order; (c) the making, assignment, modification or recording of any lease or sublease; or (d) the making, delivery, or recording of a deed or other instrument of transfer under, in furtherance of, or in connection with, this Plan, the Confirmation Order, or any transaction contemplated by any of the foregoing shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax or stamp act or real estate transfer or mortgage recording tax, or any governmental assessment. The appropriate state or local government officials or agents shall be directed to forego the collection of any such tax or assessment and to accept for filing or recordation any of the foregoing instruments or other documents without the payment of any such tax or assessment.

7.10 <u>Recordable Order</u>. Upon Confirmation of the Plan, the Confirmation Order shall be deemed to be in recordable form and shall be accepted by any recording officer for filing and 16 recording purposes without further or additional orders when certified by the Clerk of the Bankruptcy Court.

7.11 <u>Effectuating Documents and Further Transactions</u>. Rodolfo Ramon and/or other authorized officer(s) of the Debtor and/or Reorganized Debtor, shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take or direct such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

7.12 <u>Advance Payment of Claims</u>. Debtor may make advance payments on claims in Debtor's business judgment and discretion, but must stay current on payments to all other creditors pursuant to the Plan.

7.13 <u>Consensual post-confirmation modification of plan terms</u>. Notwithstanding any provision set forth in this Plan, the Debtor and any particular Creditor provided for in this Plan may enter into any agreement(s) after confirmation which modifies that Creditor's treatment and payment terms, so long as such agreement is reduced to writing and signed by the Debtor's and consenting Creditor's authorized representatives, does not provide for treatment which provides a pro rata recovery under this Plan better than the creditors in the same class, does not reduce the amount or delay the timing of payments to any other Creditor, and is consented to by the Trustee

in the exercise of his reasonable business and legal judgment, in the event of confirmation under Code Section 119l(b). Any such modified agreement(s) shall be deemed to supersede the terms of this Plan.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01 <u>Definitions and Rules of Construction</u>.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions provided within this Plan, and by the following definitions:

<u>Adversary Proceeding</u> - means a lawsuit involving the Debtor in any manner, either commenced in the Bankruptcy Court, removed, referred or transferred to the Bankruptcy Court, and any action that may be consolidated with such proceeding in the future.

<u>Administrative Expense Claim</u> - means a Claim for costs and expenses of administration of the Chapter 11 Case allowed under Sections 503(b), 507(b) or, if applicable, 1114(e)(2) of the Bankruptcy Code, including but not limited to: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor and Claims of governmental units for taxes (including Claims related to taxes which accrued after the Petition Date, but excluding Claims related to taxes which accrued on or before the Petition Date); (b) compensation for legal, financial, advisory, accounting and other services and reimbursement of expenses allowed by the Bankruptcy Court under Sections 328, 330, 331, 363 17 or 503(b) of the Bankruptcy Code to the extent incurred prior to the entry of a Final Decree herein; and (c) all fees and charges assessed against the Debtor's Estate under Section 1930, chapter 123 of title 28 of the United States Code.

<u>"Allowed" Claim or "Allowed" Interest</u> - shall mean a Claim or Interest (a) in respect of which a proof of claim or application has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Creditors prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b) and not listed as Disputed Claims or contingent or liquidated as amount, in either case as to which no objection to the allowance thereof has been interposed within any applicable period of limitation fixed by Bankruptcy rule 3001 or an order of the Bankruptcy Court, or this Plan, or as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceedings is pending or as otherwise allowed under this Plan. An Allowed Claim may refer to a Secured Claim, a General Unsecured Claim, an Administrative Claim or a Priority Claim as the context provides.

<u>Assets</u> - means all (a) assets, property, interests and effects, real and personal, tangible and intangible, including but not limited to all Cash, real property interests, fixtures, equipment, furniture, other tangible property, accounts receivable, tax refunds, contract rights, other intangible property, causes of action, claims and rights of any kind of the Debtor, including any

property of the Estate for purposes of Section 541 of the Bankruptcy Code and any causes of action potentially arising under chapter 5 of the Bankruptcy Code and any proceeds therefrom, and (b) proceeds, products, rents and profits of all of the foregoing.

      <u>Avoidance Actions</u> - shall mean those causes of action provided for under Sections 547 to 551 of the Bankruptcy Code, causes of action under applicable non-bankruptcy law for fraudulent transfer or similar legal theories.

      <u>Bankruptcy Code</u> - shall mean the Bankruptcy Code, 11 U.S.C. §101 et seq., as it existed on the Filing Date.

      <u>Bankruptcy Court</u> - shall mean the United States Bankruptcy Court for the Western District of Texas, San Antonio Division, in which the Debtor's Chapter 11 case, pursuant to which the Plan is proposed, is pending, and any Court having competent jurisdiction to hear appeals or certiorari proceedings therefrom.

      <u>Bankruptcy Estate</u> - shall mean all of the assets owned by the Debtor and its estate.

      <u>Bar Date</u> - The deadline for creditors to file claims in this case, which expired on August 29, 2023.

      <u>Cash</u> - shall mean Cash and Cash equivalents including, without limitation, checks and wire transfers.

      <u>Claim</u> - shall have the meaning given in Section 101 of the Bankruptcy Code, to wit, any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor in existence on or before the Filing Date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, legal, secured or unsecured whether or not asserted.

      <u>Class</u> - shall mean any class into which Allowed Claims or Allowed Interests are classified pursuant to Article IV above.

      <u>Confirmation Date</u> - shall mean the date upon which the Confirmation Order is entered by the Clerk of the Bankruptcy Court.

      <u>Confirmation Hearing</u> - shall mean the hearing held by the Bankruptcy Court to consider confirmation of the Plan.

      <u>Confirmation Order</u> - shall mean the order entered by the Bankruptcy Court confirming this Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

      <u>Creditor</u> shall mean any entity holding a Claim.

Debtor - shall mean Artesia Springs, LLC.

Disbursing Agent - shall mean the either of Rodolfo Ramon or the Subchapter V Trustee, as applicable.  The Disbursing Agent will make the payments required under this Plan.  Unless otherwise specifically provided herein or in an Order confirming this Plan, Rodolfo Ramon shall be the Disbursing Agent for all payments due under this Plan if the Plan is confirmed as a consensual Plan. If the Plan is confirmed as a non-consensual Plan, then unless otherwise specifically provided herein or in an Order confirming this Plan, the Subchapter V Trustee shall be the Disbursing Agent for sums due to Creditors holding Allowed Claims in Classes 3 through 11 of this Plan.

Disallowed Claim - shall mean any Claim or portion thereof which has been disallowed by a Final Order and includes any Claim which is not an Allowed Claim for any other reason.

Distribution – means a delivery of Cash by the Disbursing Agent to the Holders of Allowed Claims and Equity Interests pursuant to the Plan.

Distribution Date - means: (a). for Claims that are not disputed, thirty (30) days after the Effective Date; and (b). for Disputed Claims, thirty (30) days after the later of the Effective Date or the entry of a Final Order resolving each Disputed Claim. Notwithstanding the foregoing, the Disbursing Agent shall be authorized to make Distributions at his discretion and in conformity with this Plan immediately upon the occurrence of the Effective Date.

Disputed Claim - shall mean that portion (including, where appropriate, the whole) of any Claim (other than an Allowed Claim) that (a) is listed in Debtor's schedules of liabilities as disputed, contingent, or unliquidated; (b) is listed in the Debtor's schedules of liabilities and as to which a proof of Claim has been filed with the Bankruptcy Court, to the extent the proof of Claim exceeds the scheduled amount; (c) is not listed in the Debtor's schedules of liabilities, but as to which a proof of Claim has been filed with the Bankruptcy Court; or (d) as to which an objection has been filed and has not become an Allowed Claim.

Executory Contracts - shall mean any Pre-petition Unexpired Lease(s) or executory contract(s) of the Debtor within the meaning of Section 365 of the Bankruptcy Code.

Filing Date - shall mean June 20th, 2023, the date Debtor filed its voluntary petition under Chapter 11 of the Bankruptcy Code.

Final Order - shall mean an order or judgment of a Court, including the Bankruptcy Court, which has become final in accordance with applicable law, and which has not been stayed pending appeal.

General Unsecured Creditor Fund - the cumulative amounts shown on Exhibit B attached hereto and identified as "Annual Disposable Income Calculation".

18

Holder - shall mean the owner of any Claim or Interest, or the Person entitled to pursue the owner's rights thereunder.

Interest - shall mean an Interest (a) in respect to which a proof of interest has been filed with the Bankruptcy Court within the applicable period of limitation fixed by Bankruptcy Rule 3001 or (b) scheduled in the list of Equity Security Holders prepared and filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007(b).

Insider - has the definition ascribed to it under §101(31) the Bankruptcy Code.

Litigation Claims shall mean any and all claims and causes of action of any kind or nature asserted, or which may be asserted, by or on behalf of the Debtor or the Debtor's Estate arising under federal or state law which have not been released pursuant to this Plan or separate order of the Bankruptcy Court, including, but not limited to, claims which are asserted herein at any time in an Adversary Proceeding, a counter-claim, defense, or offset to a claim against the Bankruptcy Estate, or claims listed on Schedule B of the Debtor's Schedules filed in the Bankruptcy Case (whether such claims are currently listed or listed on an amended Schedule B filed prior to the entry of a final decree in this case), and any and all claims arising under or pursuant to Sections 502(d), 544, 545, 547, 548, 549, 550, 551 and 553 of the Bankruptcy Code, whether or not litigation has been commenced with respect to such causes of action as of the Effective Date. Debtor expressly reserves all usury claims as a defense or counter-claim to the assertion of a Claim by a Creditor in this case.

Lien - shall mean a "lien" as defined in Section 101(37) of the Bankruptcy Code.

Person - means an individual, partnership, corporation, association, joint stock company, joint venture, estate, trust, unincorporated organization, limited liability company, limited liability partnership, or other entity.

Petition Date – means June 20th, 2023.

Plan - shall mean this Chapter 11 Plan, as altered, modified or amended in accordance with the terms hereof in accordance with the Bankruptcy Code, the Bankruptcy Rules and this Plan.

Priority Non-Tax Claim - means a Claim, other than an Administrative Claim or Priority Tax Claim, which is entitled to priority in payment pursuant to section 507(a) of the Bankruptcy Code.

Priority Tax Claim - means a Claim entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

<u>Professional</u> - means any person employed in the Chapter 11 Case pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code or otherwise, and any professional seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to Section 503(b) of the Bankruptcy Code.

<u>Professional Fee Claim</u> - means a Claim of a Professional for compensation for services rendered, and/or reimbursement of costs and expenses incurred, after the Filing Date and prior to and including the Effective Date.

<u>Proof of Claim</u> – means the document evidencing sums owed to a Creditor which are filed with the Bankruptcy Court with respect to the Debtor pursuant to Bankruptcy Rules 3001 or 3002, and which appear of record in the claim register for the Debtor's Bankruptcy Case.

<u>Property or Property of the Estate</u> - means all assets of Debtor which are property of the Estate pursuant to Section 541 of the Bankruptcy Code.

<u>Pro-Rata</u> – when used in the context of a cash payment to Holders of Allowed Claims in a particular Class, Pro Rata shall mean the proportion that the Allowed amount of such Claim bears to the aggregate amount of Claims in each respective Class. When used in the context of an Equity Interest, Pro Rata shall mean the proportion that the Equity Holder(s)' share bears to the aggregate amount of all Equity Interests.

<u>Reorganized Debtor</u> - means the entity that will continue to manage the Debtor's operations after the Effective Date.

<u>Secured Claim</u> shall mean a claim secured by a lien, security interest or other charge against or interest in property in which the Debtor has an interest, or which is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (determined in accordance with Section 506(a) of the Bankruptcy Code) of the interest of the Holder of such Claim in the Debtor's interest in such property or to the extent of the amount subject to such setoff, as the case may be.

8.02 <u>Effective Date of Plan</u>. The effective date of this Plan is the fifteenth business day following the date of the entry of the order of confirmation. However, if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03 <u>Severability</u>. If, prior to confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or

interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

8.04   Binding Effect.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, any heir, executor, administrator, and the successors or assigns of such entity.

8.05 Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Texas govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.07 Revocation, Withdrawal, or Non-Consummation; No Admissions.  The Debtor reserves the right to revoke or withdraw the Plan prior to the Confirmation Date and to file subsequent plans of reorganization. If the Debtor revokes or withdraws the Plan, or if confirmation or consummation does not occur, then: (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of Executory Contracts or Unexpired Leases affected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, such Debtor or any other Person,(ii) prejudice in any manner the rights of such Debtor or any other Person, or (iii) constitute an admission of any sort by the Debtor or any other Person with respect to any matter set forth in the Plan, including liability on any Claim.

8.08  Governance.   Pursuant to § 1123(a)(6) of the Code, Debtor shall provide for the inclusion in its charter of a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors representing such preferred class in the event of default in the payment of such dividends.

8.09 Notices.  Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

21

**If to the Debtor:**
Rodolfo Ramon
Artesia Springs, LLC
8130 Interchange Parkway
San Antonio, TX 782184
 Email:  rudy@artesiasprings.com

**with a copy to:**
Bill Kingman
 Law Office of William B. Kingman, PC
3511 Broadway St.
 San Antonio, Texas 78209
Email: bkingman@kingmanlaw.com

**If to the Subchapter V Trustee:**
Michael G. Colvard
MARTIN & DROUGHT, P.C.
Weston Centre
112 East Pecan Street, Suite 1616
San Antonio, Texas 78205
Facsimile: (210) 227-7924
E-Mail: mcolvard@mdtlaw.com

8.10 <u>Distributions</u>. To the extent an Allowed Claim has not been paid in full prior to the Effective Date, the Debtor shall make all Distributions required under the Plan through its Disbursing Agent.  Upon the making of any distribution in accordance with the provisions of this Plan to Holders of Allowed Claims, the Debtor and its Disbursing Agent shall have no further obligations or liability to any party with respect to such Distribution.

8.11 <u>Distributions Upon Allowance of Disputed Claims</u>. The Holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Effective Date shall receive a Distribution as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order or by agreement of the parties. Such Distributions shall be made in accordance with this Plan based upon the Distributions that would have been made to such Holder under this Plan if the Disputed Claim had been an Allowed Claim on or prior to the Effective Date.

8.12 <u>Undeliverable and Unclaimed Distributions</u>.

(a). Holding of Undeliverable and Unclaimed Distributions. If the Distribution to any Holder of an Allowed Claim is returned to the Debtor or the Disbursing Agent as undeliverable or is otherwise unclaimed, no more Distributions shall be made to such Holder unless and until the Debtor or the Disbursing Agent are notified in writing of such Holder's then current address.

(b). After Distributions Become Deliverable. The Debtor or the Disbursing Agent shall make all Distributions that have become deliverable or have been claimed since the Distribution Date as soon as reasonably practicable after such Distribution has become deliverable.

(c). Failure to Claim Unclaimed/Undeliverable Distributions. Any Holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an undeliverable or unclaimed Distribution within ninety (90) days after the Distribution Date shall be deemed to have forfeited its claim for such undeliverable or unclaimed Distribution and any subsequent Distribution on account of its Allowed Claim and shall be forever barred and enjoined from asserting any such claim for an undeliverable or unclaimed Distribution or any subsequent Distribution on account of its Allowed Claim against the Debtor, its Estate, the Disbursing Agent or their property. In such cases, the funds represented by such undeliverable or unclaimed Distribution and any subsequent Distribution on account of such forfeiting Claimant's Allowed Claim(s) shall be distributed to the other Creditors holding Allowed Claims in this case (but only up to the full amount of their Allowed Claims) and to the Equity Interest Holders in the order set forth in the classification scheme noted herein.

8.13 Means of Cash Payment. Cash payments made pursuant to this Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Debtor or the Disbursing Agent.

8.14 Delivery of Distribution. Except as otherwise set forth in this Plan, Distributions to Holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such Holders (or at the last known addresses of such Holders if no Proof of Claim is Filed or if the Debtor has been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Debtor or the Disbursing Agent, or (c) if 24

no Proof of Claim has been Filed and the Debtor or the Disbursing Agent have not received a written notice of a change of address, at the addresses reflected in the Schedules, if any.

## ARTICLE IX
## DISCHARGE

9.01 <u>Discharge.</u> If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt:

(i) imposed by this Plan; or

(ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments

due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Bankruptcy Code. The Debtor will not be discharged from any debt:

(i)      on which the last payment is due after the first 3 years of the plan, or as otherwise provided in § 1192; or

(ii)     excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

      9.02     <u>Effect of Confirmation of the Plan</u>.

      <u>Legally Binding Effect</u>. The provisions of this Plan shall bind all Creditors and Interest Holders, whether or not they accept this Plan. On and after the Effective Date, all Holders of Claims shall be precluded and forever enjoined from asserting any (i) Claim against the Debtor based on any transaction or other activity of any kind that occurred prior to the Confirmation Date except as permitted under the Plan; and (ii) derivative claims, including claims against third parties asserting alter ego claims, fraudulent transfer claims, or any type of successor liability based on acts or omissions of the Debtor.  **Notwithstanding this provision, any derivative claims against third parties shall only be enjoined as follows:**

      **A.  No Creditor of the Debtor shall be permitted to collect upon any Claims against the Debtor in any manner other than as provided for in the Plan.**
      **B.  A temporary injunction is hereby entered and shall be in effect as of the Effective Date, prohibiting the commencement or continuation of any action or proceeding against any affiliate, responsible person, guarantor, manager, member, equity holder, officer or director of the Debtor, that otherwise would be liable to such Holder of a Claim for payment of such Claim for any reason whatsoever, or against the property of any of the foregoing persons, so long as the Reorganized Debtor is not in default of the payment terms** 25

**of such Claim as provided herein.  Further, the statute of limitations against any such third party shall be suspended during the period the Plan payments are not in default.**

      <u>Injunction</u>. The entry of the Confirmation Order will operate as a general resolution with prejudice, as of the Effective Date, of all pending legal proceedings, if any, against the Debtor and its assets and properties and any proceedings not yet instituted against the Debtor or its assets, except as otherwise provided in the Plan. Except as otherwise expressly provided in the Plan or the Confirmation Order, all Persons who have held, may have held, hold, or may hold Claims against the Debtor are permanently enjoined on and after the Effective Date from (a) commencing or continuing in any manner any action or other proceeding of any kind against the Debtor or its property, with respect to any such Claim, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order with respect to any such Claim against the Debtor or its property, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor or its property, with respect to such Claim, (d) asserting any right of

subrogation of any kind against any obligation due to the Debtor or the property of the Debtor or the Estate with respect to any such Claim and (e) asserting any right of setoff or recoupment against the Debtor or the Estate except as specifically permitted by § 553 of the Bankruptcy Code. Unless otherwise provided in the Plan or by order of the Bankruptcy Court, all injunctions or automatic stays provided for in these cases pursuant to § 105, if any, or § 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date will remain in full force and effect until the Effective Date.

Exculpation. Neither the Debtor or Reorganized Debtor, or any of their respective partners, general partners, members, officers, directors, employees, agents, advisors or Professionals have or may incur any liability to any Holder of a Claim or Equity Interest, or any other party in interest, or any of their respective members or former members, agents, employees, representatives, financial advisors, attorneys or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to or arising out of the Chapter 11 Case, the negotiation and pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan (the "Chapter 11 Activities"), except for their acts or omissions constituting willful misconduct or gross negligence, as finally determined by a court of competent jurisdiction, and in all respects are entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in connection with the Chapter 11 Activities. No Holder of a Claim, Equity Interest or any other party in interest, including their respective agents, employees, representatives, financial advisors, attorneys or affiliates, have any right of action against the Debtor, Reorganized Debtor, or any of their respective partners, general partners, officers, directors, members, employees, agents, advisors or Professionals for any act or omission in connection with the Chapter 11 Activities, except for their acts or omissions constituting willful misconduct or gross negligence as finally determined by a court of competent jurisdiction.

Continuation of Anti-Discrimination Provisions of Bankruptcy Code. A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtor, or another Person with whom the Debtor has been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or 26

because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit.

## ARTICLE X
## RETENTION OF JURISDICTION

10.01. Exclusive Jurisdiction of Bankruptcy Court. Under Sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and this Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a). allow, disallow, determine, subordinate, litigate, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest (whether filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated or for contribution, indemnification or reimbursement), including the compromise, settlement and resolution of any request for payment of any Administrative Expense Claim or Priority Claim, the resolution of any Objections to the allowance or priority of Claims or Equity Interests and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim or Equity Interest to the extent permitted under applicable law;

(b). grant or deny any applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or this Plan;

(c). hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all causes of action, and consider and act upon the compromise and settlement of any Claim, or cause of action;

(d). determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(e). ensure that all distributions to Holders of Allowed Claims under this Plan and the performance of the provisions of this Plan are accomplished as provided herein and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of this Plan;

(f). construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with Section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of this Plan and all contracts, instruments, releases, other agreements or documents created in connection with this Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the 27

maintenance of the integrity of this Plan in accordance with Sections 524 and 1141 of the Bankruptcy Code following the occurrence of the Effective Date;

(g). determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of this Plan (and all exhibits and schedules to this Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by this Plan or the Confirmation Order, or any entity's rights arising under or obligations incurred in connection therewith;

(h). modify this Plan before or after the Effective Date pursuant to Section 1127 of the Bankruptcy Code or modify the the Confirmation Order or any contract, instrument, release, or other agreement

or document created in connection with the Plan or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, this Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan, or the Confirmation Order, in such manner as may be necessary or appropriate to consummate this Plan, to the extent authorized by the Bankruptcy Code and this Plan;

(i). issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation, implementation or enforcement of this Plan or the Confirmation Order;

(j). enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(k). determine any other matters that may arise in connection with or relating to this Plan, the Confirmation Order or any contract, instrument, release, or other agreement or document created in connection with this Plan or the Confirmation Order;

(l). determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m). hear and determine matters concerning state, local and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code;

(n). enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(o). determine and resolve controversies related to the Estate or the Debtor from and after the Effective Date;

(p). hear and determine any other matter relating to this Plan; and

(q). enter a final decree closing this Chapter 11 Case.

## ARTICLE XI
## OTHER PROVISIONS

11.01 <u>The Trustee</u>. The trustee appointed under section 1183(a) of the Bankruptcy Code ("Trustee") will have appropriate access to the management, books and records and professionals of the Company to evaluate the Plan. The Trustee's term is anticipated to end upon substantial consummation of the Plan. As permitted by section 1194(b) of the Bankruptcy Code, the Plan provides that the Debtor, and not the Trustee, will make all required payments under the Plan, thus resulting in administrative cost savings. However, unless otherwise specifically provided herein or in an Order confirming this Plan, the Subchapter V Trustee shall be the Disbursing Agent for sums

due to Creditors holding Allowed Claims in Classes 4 through 11 of this Plan if the case is confirmed as a non-consensual Plan. The Trustee shall make its required filings to discharge his duties.

11.02    Modification of the Plan. The Debtor may propose amendments or modifications to this Plan at any time prior to the date of the entry of the Order Confirming Plan, subject to the requirements set forth in 11 U.S.C. §1193(a). After any amendments or modification to the Plan are filed with the Court, the Plan as modified shall become the Plan. The Debtor may seek to modify the Plan after confirmation, subject to the requirements set forth in 11 U.S.C. §1193(b) – (d).

11.03 Vesting of Estate Property and Effect of Default. If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date, title to all assets and properties dealt with by the Plan shall vest in Reorganized Debtor, free and clear of all Claims and Interests other than any contractual secured claims granted under any lending agreement, on the condition that Reorganized Debtor complies with the terms of the Plan, including the making of all payments to creditors provided for in such Plan. If Reorganized Debtor defaults in performing under the provisions of this Plan and this case is converted to a case under chapter 7, all property vested in Reorganized Debtor and all subsequently acquired property owned as of or after the conversion date shall re-vest and constitute property of the bankruptcy estate in the converted case.

In the event the Debtor's Plan is confirmed under § 1191(b), all property of the estate shall remain vested in the estate until the Debtor completes all of the payments under the Plan and a discharge is entered herein. In addition, property of the estate shall include all property identified in 11 U.S.C. §1186.

11.04.    Retention and pursuit of claims. Any and all Litigation Claims owned by, accruing to or assertable by the Debtor shall remain assets of the Debtor's bankruptcy estate pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code. Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, only the Debtor shall have the right to pursue or not to pursue, or, subject to the terms of this Plan, compromise or settle any Litigation Claims owned or held by the Debtor or its Estate as of the Effective Date. From and after the Effective Date, the Debtor may commence, litigate, and settle any Litigation Claims or rights to payment or claims that belong to the Debtor that may be pending on the Effective Date or instituted by the Debtor after the Effective Date. Other than as set forth herein, no other Person may pursue such Litigation Claims after the Effective Date. The Debtor may pursue Litigation Claims without the need for filing any motion seeking authority to do the same. Furthermore, any attorney-client privilege, work29

product privilege, or other privilege or immunity attaching to any documents or communications (whether written or oral) shall also continue to exist for the benefit of the Debtor and shall vest in the Debtor and its representatives, and shall also be preserved for and as to the Debtor. The Bankruptcy Court shall retain jurisdiction to adjudicate any and all Litigation Claims and approve any such settlement, whether commenced prior to or after confirmation of the Plan and the Effective Date.

11.05.   <u>Default</u>.   Except as otherwise provided for in this Plan, in the event of an alleged default by the Reorganized Debtor under the Plan, any party alleging such default shall provide written notice of the default (the "Default Notice") to the Reorganized Debtor and Debtor's counsel at the addresses set forth in Section VIII of the Plan.   Reorganized Debtor shall have thirty (30) days from receipt of the Default Notice to cure any actual default that may have occurred.   Reorganized Debtor reserves the right to dispute that a default has occurred and shall notify the party alleging the default that Reorganized Debtor contends no default has occurred, with such notice to be sent within the thirty (30) day time-period following receipt of the Default Notice.   In such event, the Bankruptcy Court shall retain jurisdiction over the dispute relating to the alleged default.   In the event Reorganized Debtor fails to either dispute the alleged default or timely cure such default, the party alleging such default shall be entitled to assert its rights under any and all applicable bankruptcy and/or non-bankruptcy laws.

11.06 <u>General Provisions – Texas Comptroller</u>.   The following provisions apply to the Allowed Claims of the Texas Comptroller: (A). Notwithstanding any provision in this Plan to the contrary, the Plan shall not release or discharge any entity, other than the Debtor or Reorganized Debtor, from any liability owed to the Texas Comptroller of Public Accounts for a tax debt, including interest and penalties on such tax.  This provision is not admission by any party that such liability exists; (B). Notwithstanding anything in the Plan to the contrary, the Plan shall not limit the Comptroller's setoff rights under 11 U.S.C. § 553.  This provision is not admission by any party that such setoff rights exist; (C). Default: A failure by the Reorganized Debtor to make a payment to the Comptroller pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fails to cure an Event of Default as to tax payments within ten (10) calendar days after service of written notice of default from the Comptroller, the Comptroller may (1) enforce the entire amount of its claim, (2) exercise all rights and remedies under applicable nonbankruptcy law, and (3) seek such relief as may be appropriate in this court.   Notice of the default shall be served by first class mail and email to Artesia Springs and its counsel to the addresses set forth in Section 8.3 above.
The Debtor shall be allowed to cure up to two (2) defaults.  Upon a third default, the Comptroller, at its option, may declare the default non-curable and proceed to collect the remainder of the debt.

11.07 <u>Governing Laws</u>. The Plan shall be governed by the laws of the State of Texas and the laws of the United States, as may be applicable.

*[Remainder of the Page Intentionally Left Blank}*

Submitted on September 28, 2023        Respectfully submitted,

Artesia Springs, LLC
By*:  /s/ Rodolfo Ramon, Jr.*
     Rodolfo Ramon, Jr., CEO

*/s/William B. Kingman*
William B. Kingman, SBN 11476200
Law Offices of William B. Kingman, PC
3511 Broadway
San Antonio, TX  78209
Tel: (210) 829-1199
Email: bkingman@kingmanlaw.com
**Counsel for Debtor**

*Exhibit A-Plan Proponent's Estimated Liquidation Value of Assets*

**Assets\***

| | |
|---|---|
| a. Cash on hand | $ 50,993.66 |
| b. Security deposits | $ 19,600.00 |
| b. Accounts receivable | $ 133,398.66 |
| c. Inventory | $ 249,792.10 |
| d. Furniture, fixtures and office equipment | $ 12,563.00 |
| e. Other machinery & equipment | $ 311,710.00 |
| e. Automobiles (Trailer) | $ 16,000.00 |
| f. Building & Land | $ 0.00 |
| g. Customer list | $ 0.00 |
| h. Investment property (e.g. stocks, bonds, investments) | $ unknown |
| i. Intellectual property rights | $ 0.00 |
| j. Lawsuits or other claims against third-parties | $ 49,867.92 |
| k. Other property to be surrender to lienholders (ERTC) | $ |
| l. Other intangibles (such as avoiding powers actions) | $ 0.00 |
| **Total Assets at Liquidation Value** | **$ 829,525.34** |

*\*Asset values listed in Schedules-Cash and receivables may be depleted at liquidation and security deposit is likely to be offset against claim*

| | |
|---|---|
| | $ 34,000.00 |
| **Less:** | |
| Sales expenses on hard assets (10% commission) **Less:** Secured creditors= recoveries | $ 795,525.34 |
| **Less:** | |
| Chapter 7 trustee fees and expenses (assumes secured Creditors would allow Trustee to liquidate assets) **Less:** Chapter 11 administrative expenses (estimate) **Less:** | $ 23,865.76 |
| Priority claims, excluding administrative expense claims | $ 40,000.00 |
| (1) Balance for unsecured claims | $ 0.00 |
| (2) Total dollar amount of unsecured claims (as scheduled and filed, including undersec'd claims) | $ 576,000.00 (subject to objections and allowance) |
| *Percentage of Claims Which Unsecured Creditors Would Receive Or Retain in a Chapter 7 Liquidation:* | $ 0.00 |
| *Percentage of Claims Which Unsecured Creditors Will Receive or Retain under the Plan:* (Based upon estimate of Debtor's total allowed unsecured claims) | **37%** |

**Exhibit "B"-Attached Hereto**

Projections of Cash Flow and Earnings for Post-Confirmation Period